## HARDIN et al. v. LYLES LAUNDRY, Inc.

### No. 4609.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1933.

Rehearing Denied July 15, 1933.

Julius T. Long, of Shreveport, for appellants.

Tucker & Mason and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for appellee.

TALIAFERRO, Judge.

The plaintiffs, Misses Meda Hardin and Eddye Clarkson, nurses in training at the Shreveport Charity Hospital, bring this suit against the Lyles Laundry, Incorporated, to recover damages for personal injuries to them, respectively, alleged to have been sustained from one of defendant's laundry trucks running into them on Murphy street (which bounds the hospital grounds on the west) at about the hour of 6:15 p. m. December 23, 1931.

It is alleged, and the evidence shows, that the plaintiffs were going westerly across Murphy street, from the hospital, towards the nurses' home on the opposite side of that street, for sleep and recreation, and were near the west side thereof when run down and injured; that the truck that ran them down was moving northerly, at a very rapid and reckless rate of speed on its left side of said street; that the accident happened about 100 yards from Texas avenue, to which Murphy street is perpendicular; that Murphy street

is paved, and is 30 feet wide between curbs; that the name of the driver operating said truck was unknown to petitioners when the accident occurred, and is still unknown to them; that he did not stop after the collision, but immediately drove from the scene at a rapid rate of speed, without any one recognizing him.

It is further alleged that said truck was owned by defendant, and the driver thereof was its employee, and was operating within the scope of his employment when the accident happened; that said driver was not keeping a proper lookout ahead of him; that, if he had been doing so, he could have, and should have, seen petitioners in ample time to have avoided the accident; that on Murphy street, between the hospital grounds and the nurses' home, traffic is so heavy that motor vehicles should not travel at a rate of speed greater than 5 miles per hour; that no good reason existed for said truck to be traveling on its left-hand side of the street, where petitioners were and had a right to be; that defendant's trucks daily and habitually, while gathering and delivering laundry, entered Murphy street from Texas avenue, as the one injuring petitioners did, and the drivers thereof were well acquainted with traffic conditions thereon.

Defendant generally denied all the allegations of plaintiffs' petition, and specially denied that petitioners were run over by one of its trucks or by any truck operated by one of its employees.

Plaintiffs' demands were rejected in the lower court, and they appeal.

Only questions of fact are involved. In the trial below plaintiffs, in their labored effort to fasten responsibility on defendant, virtually confined their evidence, bearing upon the identity of the offending truck, to the one regularly driven and operated by Herman Brandt, one of defendant's employees, whose duty it was to take up and deliver back laundry to the company's customers.

Plaintiffs, another nurse in training, and Mrs. Stella Haynes, a graduate nurse, were together when the accident occurred. Plaintiffs were knocked to the pavement, unconscious. Miss Hardin was pushed along the pavement several feet; neither recognized the truck nor its driver. Mrs. Haynes and the other nurse barely escaped injury by hurriedly running to the west curb of the street.

Dr. Sanderson, superintendent of the hospital, was in his apartment in a hospital building, overlooking Murphy street, and heard the crashing sound emanating from the accident, and rushed to the window, and saw the car or truck that had done the injury dash away, apparently in second gear. He instructed Mrs. Sanderson to call the police, and then rushed downstairs and reached the injured

girls within a minute. He fixed the time as between 6 and 6:10 o'clock. Two or three nurses were there. Plaintiffs were then lying unconscious in the street, about 20 or 30 feet from where first struck by the truck.

M. L. Grosjean preceded Dr. Sanderson to the scene, and then and there declared the truck that ran the nurses down was a Lyles Laundry truck, and that it passed so close to him that some part of it struck his right hand, inflicting a minor injury.

Dr. Sanderson, as was his right and duty, interested himself in behalf of plaintiffs in the investigation and search that was immediately instituted to identify the operator and the ownership of the truck that struck plaintiffs. Policemen promptly arrived on the scene. It was generally accepted by all who took part in the investigation that one of defendant's laundry cars was guilty of the tort, and the drivers Brandt and Sebastin were under suspicion. This impression doubtless was created by Grosjean's declarations. It was soon disclosed that Sebastin was not in that part of the city at time of the accident, and thereafter the investigation narrowed down to Brandt, who, it was ascertained, had been delivering laundry within a short distance of the hospital before and after the accident. He was located between 7:30 and 8 o'clock at the York Hotel, at corner of Texas and Christian Streets, a few blocks from the hospital, and informed that he had been accused of running over the nurses. He denied guilt, and proceeded to the laundry plant of defendant, where representatives of the police department examined his car, as they had done of the other cars as they came in for the night, and found no injury to the car to indicate a collision.

Brandt was then taken over to the hospital, where the investigation was in progress. His statement there was not reduced to writing. As a witness when the case was tried, he gave his itinerary, shortly before and after 6 o'clock, as follows: Left the laundry on Centenary boulevard, in company with Jack Reed, an employee, at about ten minutes to 6 o'clock and drove to Kress' on Texas street to buy some light bulbs. He then returned to the laundry, and again left there at 6:10 o'clock and went to the York Hotel, at corner of Texas avenue and Christian street. There he asked a Mr. J. A. Williams to accompany him. They drove up to corner of Hope and Texas Streets and delivered laundry; from there, going via Hope street, they drove to corner of Pierre avenue and Murphy street, about three blocks, for Mr. Williams to interview a man he claimed owed him some insurance money, and from there to White Cleaners (the location not being given), at between 6 and 6:30 o'clock, where he was given a package of laundry to be delivered to Wales Apartments at corner of Creswell and Robinson streets, about 2 miles distant. Williams was

still riding with him. They then returned to the York Hotel, where supper was served. It was then that Brandt was informed that the police were looking for him. His statement about making the trip for White Cleaners to the Wales Apartments is corroborated by Mr. Cooper, proprietor of the former, and by Williams, who made the trip with him. His statement about going to Kress' and returning to the laundry is corroborated by Jack Reed, a fellow truck driver. The police checked up on the itinerary of Brandt, and found he had been at the various places named by him, at about the hours fixed by him.

No charges were made against him. He is positive he did not run his truck on Murphy street, where the nurses were injured, while delivering laundry the evening of the accident. Defendant's other eight truck drivers, as witnesses, denied that they were guilty of injuring plaintiffs.

The bodies of defendant's trucks are painted black, with red panels, with the word "Lyles" in large white or aluminum letters horizontally across the rear-end door, or doors, below the glass panel, and in like arrangement on the sides. All these trucks have double doors in the rear end, with glass panel in the upper end of each door, excepting the one regularly driven by Brandt. This one has only one door in the rear end, with one glass panel in its upper end.

We shall now take up the testimony of the various witnesses which throws any light on the identity of the truck that injured plaintiffs.

Mr. Grosjean operated a small soda water stand at the west side entrance to the hospital grounds, almost opposite the nurses' home across Murphy street. He says he had been across the street, which is 30 feet wide, and was returning to the hospital when he saw the truck approaching, on his right side, from Texas avenue. He says he jumped back to the curb, and, as he did so, "it came whizzing by and hit my hand." The nurses were crossing below him about 30 or 40 feet. As to the identity of the truck, he says: "It seemed to me, am positive it was a Lyles truck, very plain to see it. It was red and green, and had the words 'Lyles Laundry' across it."

And again, on cross-examination, he said: "Yes, that is my impression, positive it hit me and I glanced up * * * and it had a red panel and had the words 'Lyles' written across it, and furthermore, as it passed me I could see in the back of the truck that had the two panel glass and inside of this truck swinging with the motion of the car, seemed to be a lot of suits hanging, I suppose, from the coat hangers."

In another place he said: "I don't think I could make a mistake." He was well acquainted with Brandt, but did not recognize the driver of the truck to be him. He had seen

trucks of other laundries pass down Murphy street, but this Lyles truck was noticed more often—"seemed to have a regular route." He says the truck was painted red and green, whereas the Lyles trucks are red and black; and that it had two rear doors with two glass panels, whereas the truck used by Brandt had only one rear door and one glass panel. There is evidence in the record that Grosjean stated, very soon after the accident, that Brandt was not the driver of the truck that hit him; that he was glad to know that he was not driving this truck, as he had known him for several years.

Dr. Younger, in his car, was on Murphy street, at intersection of Texas avenue, waiting on stop light, a few seconds before the accident, and testified that he saw one of defendant's trucks, followed by an old-looking sedan or five passenger car, turn to its right into Murphy street, and travel towards the site of the accident. He says that he then heard the noise of a collision and drove down to where the nurses were in the street. He was about 100 yards, plus the width of Texas avenue, from the spot where the accident occurred. At this hour the street lights were on and traffic at this point is very heavy. It is not impossible that the doctor could be in error as to the identity of the truck he saw turn into Murphy street, though he is very positive; and, again, the truck striking plaintiffs could not have made the same noise as is produced when two cars collide.

Mrs. Stella Haynes, as stated before, was crossing Murphy street, with plaintiffs, when injured. She testified that plaintiffs were immediately in front of her and Miss Adams, the other nurse. Of the facts of the accident, after stating that she and the other three were going over to the nurses' home, she says: "Yes, and Miss Hardin and Miss Clarkson were walking a little to the left of us, and just immediately after they passed the midline of the street why I noticed the car lights coming from towards Texas Avenue, and I jerked Miss Adams and ran to the sidewalk and hollered to the other girls to run, a car was going to hit, and just as I hollered the car struck them and knocked Miss Clarkson and Miss Hardin on down in front of the nurses' home steps, and there is where they picked her up."

She further stated that the noise of the approaching truck and its lights attracted her attention. It was on them before she realized it; that, after it passed, and she had reached the sidewalk, she looked around, and "by that time they were in front of the nurses' home dragging or pushing Miss Hardin along, the truck was, it was a gray truck; old, dirty, gray truck, with two lights in the back, double doors." She is positive it was not a Lyles truck. It had no red on it, and was larger than the Lyles trucks; that the name was written diagonally across the back. She

also states that Mr. Grosjean came from the hospital side of the street (the pop stand) to where the nurses were, after the collision, and not from the west side of the street, as testified by him.

She thought the name on the back of the truck was "Excelsior," but, after having visited the various laundries of the city, was unable to identify the one she saw that night.

Naomi Jackson, a witness for defendant, was working for George Khoury's candy kitchen at 1312 Murphy street, and at the time of the accident she says she was standing on the street, near the hospital dining room, waiting for a friend, and saw the nurses while crossing the street, and saw the truck after it had hit them. The truck passed her going so fast she could not recognize the make, but is certain it was not one of the Lyles trucks. "It was one of those old trucks, white or grayish, just an old rattling doors. I see it when it passed." It was larger than the ones used by Lyles. She says that the people she worked for (the Khourys) "come out and looked after it happened," and, when asked how she knew, replied, "Because the man I worked for he passed me, went up to the gate and looked," and that "he asked me what was the matter."

E. A. King, who claims to be owner of stock in garages, filling stations, etc., testified that he was in his car on Murphy street, pointing towards Texas avenue, one block below the hospital, after trying to collect some money from a negro man, when the accident occurred, and observed a truck approaching him (on Murphy street) at a rapid rate of speed, which attracted his attention. It was a laundry truck, dirty looking, dingy gray color, not a Lyles truck. He says: "I just saw Pennington on the side, noticed as it passed, said Pennington on the side of the truck."

Very soon after this truck passed him, he noticed the people assembling where the accident happened, and he "pulled" up there. He saw no other truck come down the street then. He did not know, and would not attempt to say, that this Pennington truck was the one that ran over the nurses.

Harry Bramlett says he was on Winston street walking towards Murphy, about a block from the hospital, when the accident happened, and saw a Pennington Laundry truck moving at a high rate of speed down Murphy from the direction of the accident. He went to the hospital to ascertain who had been hurt, as he had a sister working there. He saw no other laundry truck about there at that time. He heard no one on the ground there say a Lyles truck did the injury to plaintiffs.

Eddie King, who lived on Murphy street, opposite the hospital grounds, says he was on his porch and saw the truck that ran into plaintiffs pass, at a high rate of speed. He recognized it as being one of the Pennington

Laundry trucks. He was certain it was not one of Lyles'. The speed of the truck first attracted his attention. He saw no other truck pass at that time. He went down to the scene of the accident immediately.

Mr. Lyles, president of defendant company, assisted Dr. Sanderson in the investigation the night of the accident and afterwards, and says he offered a reward of $50 to "find out whose truck hit the nurses, regardless of whose it was." He continued to investigate for several days, and was finally convinced his truck did not do the damage.

Mr. O. O. Crabtree, city detective, who took an active part in the search to fix identity of the truck driver responsible for the accident, says all Lyles trucks were examined that night, and none showed injury usual to collisions; that, as all the evidence then known to him pointed only to a Lyles truck as having caused the injury to plaintiffs, the trucks of other laundries were not inspected nor were their itineraries that evening checked.

L. H. Wimberly, city detective, worked on the case with Crabtree, and their evidence is virtually the same. He is positive Mrs. Haynes did not state, when interrogated the night of the accident, that the truck that ran the nurses down was of a grayish color, as of the Excelsior type; that she said she could not tell what kind of truck it was, but thought the name on it was in red and ran diagonally across the back.

When defendant closed its evidence, plaintiffs placed George Khoury, the employer of Naomi Jackson, on the stand in rebuttal. On objection by defendant's counsel, his evidence was ruled out. On application of plaintiff, the case was reopened to admit this witness' evidence. He testified that he ran a candy shop at 1258 Murphy street, about 45 steps from the Murphy street entrance to the hospital; that he had been in the country selling candy the evening of the accident, and had returned and parked his car on the east side of Murphy street, about 15 steps from where the nurses were run over; that he had not gone to his home, and was in the act of getting out of his car, when the accident occurred. While he had not been home, after the trip to the country, he states that Naomi was inside his house. Naomi, it will be recalled, stated that Khoury came out of the house and asked her what had happened up the street, referring to the accident. Khoury says that, after the nurses were picked up, he met Naomi between his steps and the sidewalk, and she asked him what had happened. He fixed the time at around 6:05 o'clock, and was certain the truck was one of defendant's. He recognized the defendant's name on the side and on the rear door, and recalled it only had one door in the back. He told Mr. Grosjean what he had seen and heard of the collision, and assisted in placing plaintiffs on stretchers. He admits he never told Dr. Sanderson, until three days before he was first called as a witness, that he recognized the truck as being one of defendant's.

We have analyzed the evidence of every witness who claims to know anything touching the identity of the truck that injured plaintiffs, and from this analyzation a hopeless contradiction obviously appears. We have omitted some immaterial discrepancies in the testimony of some of the witnesses, in the effort to avoid extending this opinion to too great length. It is already long.

The two witnesses, Grosjean and Mrs. Haynes, who were nearest the accident, contradict each other on most material points. Mrs. Haynes' evidence we think the more positive and consistent. If she were disposed to color her testimony or show favoritism, it would certainly be in favor of plaintiffs, with whom she was associated in the hospital. Grosjean did not think he could be mistaken as to the identity of the truck, while Mrs. Haynes is positive it was not a Lyles truck. If the truck had two rear doors with two glass panels therein, as Grosjean says, it is certain it was not defendant's truck. The Brandt truck had only one door and one panel in rear; and again Grosjean says the truck was green and red, while all defendant's are black and red.

Khoury and his employee, Naomi Jackson, contradict each other on vital points. Both say they saw the accident. Khoury says it was a Lyles truck, while Naomi says it was a Pennington truck. Khoury says that Naomi came out of his house and asked him what had happened, while Naomi says Khoury came from the house and inquired of her what had happened. Khoury had been absent for the day. He parked his car on Murphy street before going home. One of them, and probably both, is falsifying. Their evidence, the best that can be said, is destructive of each other.

Dr. Younger could be mistaken in his testimony, and we shall have to eliminate it on that ground. This leaves the testimony of Eddie King, Harry Bramlett, and E. A. King, unaffected, all to one accord that the truck in question was one of Pennington's. Eddie King saw it pass his door and strike the nurses, while the other two saw a Pennington truck fleeing the scene. To this testimony we have that of Brandt that he was not driving the guilty truck and of the policemen that none of the Lyles trucks showed signs of collision, immediately after the accident. The alibi of Brandt, while not conclusively established, is strongly supported by corroborating evidence of several witnesses.

This is a case wherein the appellate court should rely heavily upon the trial court's findings on the facts. Certainly no manifest error appears.

Judgment affirmed.